OPINION OF THE COURT
Bernard M. Bloom, S.
This is a proceeding to construe articles fourth and fifth of the last will and testament of Louise Young, dated March 28, 1983, duly admitted to probate on February 4, 1987. The issue before the court is whether these articles comply with the statutory requirements for revocation of a Totten trust, as set forth in EPTL 7-5.2 (2).
Article fourth of the decedent’s will provides as follows:
"fourth: From those monies presently on deposit in my name in the Dime Savings Bank, located at DeKalb Avenue and Fulton Street, Brooklyn, New York, I give and bequeath the following sums:
"(a) I give and bequeath the sum of five hundred ($500.00) dollars to Bridge Street A.M.E. Church, 277 Stuyvesant Avenue, Brooklyn, New York;
"(b) I give and bequeath the sum of five hundred ($500.00) dollars to Progressive Women’s Club, 277 Stuyvesant Avenue, Brooklyn, New York;
"(c) I give and bequeath the sum of five hundred ($500.00) dollars to Rufus L. Dash, presently residing at 519 Halsey Street, Brooklyn, New York.”
The article reads on to provide that after the above three payments are made the balance of the moneys on deposit in the decedent’s account in the said Dime Savings Bank shall be divided into five equal shares and distributed amongst five children of the decedent’s grandnieces.
Article fifth provides as follows:
"fifth: I give and bequeath all of my monies on deposit at the Metropolitan Savings Bank, 1281 Fulton Street, Brooklyn, New York, to the following three persons (or the survivors thereof) to be divided equally between them:
"(1) Greta Clark (a niece);
*746 "(2) Carol Swinger (a grandniece);
"(3) Ann Alexander (a grandniece)”.
Notably there is also a residuary clause in article sixth, wherein Greta Clark, Carol Swinger and Ann Alexander are equal legatees. The import of this provision relates to the unsatisfied demonstrative gifts under articles fourth and fifth and will be described more extensively below.
At the time of her death, the decedent had moneys on deposit in one trust account, numbered 01-2319852, at the same branch of the Dime Savings Bank referred to in article fourth, in trust for Greta Clark, Carol Swinger, and Fred Louis Swinger. The date of death balance in this account was approximately $100,000.
Additionally, the decedent had another account in Dime Savings Bank, in her name alone, with a date of death balance of approximately $900. At the time of her death, the decedent had moneys on deposit in a trust account at the Metropolitan Savings Bank, referred to in article fifth, naming Carol Swinger as the beneficiary thereof.
Citation was issued to all named beneficiaries under the will and/or their guardians and to the Totten trust beneficiaries. They have not formally appeared in this proceeding, but the Totten trust beneficiaries have contacted the petitioner’s attorney and contend that the will provisions do not comply with the statutory requisites for an effective testamentary revocation of a Totten trust. Accordingly, the petitioner requests a construction to determine whether the provisions of the will effectively revoke the Totten trusts.
discussion
As of 1975, the manner in which a depositor may effectively revoke a Totten trust, by will or otherwise, has been statutorily prescribed. As to testamentary revocations, EPTL 7-5.2 (2) provides as follows: "A trust can be revoked, terminated or modified by the depositor’s will only by means of, and to the extent of, an express direction concerning such trust account, which must be described in the will as being in trust for a named beneficiary in a named financial institution. Where the depositor has more than one trust account for a particular beneficiary in a particular financial institution, such a direction will affect all such accounts, unless the direction is limited to one or more accounts specifically identified by account number in addition to the foregoing requirements. A *747 testamentary revocation, termination or modification under this paragraph can be effected by express words of revocation, termination or modification, or by a specific bequest of the trust account, or any part of it, to someone other than the beneficiary. A bequest of part of a trust account shall operate as a pro tanto revocation to the extent of the bequest.”
Prior to the enactment of the statute, where revocation was at issue, the court’s inquiry focused on an interpretation of the depositor’s intent, and consequently produced a myriad of conflicting decisions, devoid of any discernible guidelines. The underlying purpose behind the statute was to provide objective standards for the courts to apply, wherein intent is not a factor, and thereby instill certainty to the area. (See, mem of NY Law Rev Commn, 1975 NY Legis Doc No. 65[B], 1975 McKinney’s Session Laws of NY, at 1534.) Accordingly, this court, and others, have required literal compliance with the statute. (See, Matter of Flynn, 119 Misc 2d 561 [Sur Ct, Bronx County 1983]; Matter of Margolis, NYLJ, Oct. 20, 1981, at 12, col 2 [Sur Ct, Kings County]; Matter of Neuman, 106 Misc 2d 135 [Sur Ct, NY County 1980]; Matter of Silberkasten, 102 Misc 2d 227 [Sur Ct, Kings County 1979]; Matter of Blume, NYLJ, Aug. 15, 1979, at 12, col 6 [Sur Ct, Kings County].)
The statute was discussed at length by this court in Matter of Silberkasten (supra), the critical portions of which will be mentioned herein. The statute, in effect, contains two conditions which must be followed in order for there to be an effective testamentary revocation. Initially, there must be an express direction in the will concerning such trust account. To constitute an express direction, the depositor’s will must include either express words of revocation, termination or modification, or provide for a specific bequest of the trust account to someone other than the beneficiary. Second, the trust account must be described in the will as being in trust for a named beneficiary in a named financial institution.
In view of the legislative intent of the statute, coupled with the express terms recited above, the court is of the opinion that the language of articles fourth and fifth is insufficient to satisfy the foregoing conditions. The statute requires that the will identify both the financial institution and the trust beneficiary, whereas the will in the instant case refers only to the financial institutions. Further, the necessity of literal compliance with the statute is particularly evident under the facts presented here. Both at the time the will was executed and on the date of death, the decedent had two *748 accounts in the Dime Savings Bank, one in trust, the other in her name alone. Article fourth reads "monies presently on deposit in my name in the Dime Savings Bank.” With the absence of language naming the beneficiary, a persuasive argument could be made that only the account in the decedent’s name alone was to be affected by the will. Conversely, the $900 date of death balance in said account is clearly insufficient to satisfy the bequests under article fourth, and consequently an argument could be made that the Totten trust account, with a date of death balance exceeding $100,000, was revoked and to be distributed according to the will.
The above illustrates the type of arguments that the courts had struggled with prior to 1975. To create an exception to the statute here and hold that naming the financial institution is sufficient without reference to the beneficiary would restore confusion and inconsistency to this area, those concerns which the statute was designed to remedy.
Accordingly, the court holds that the language of articles fourth and fifth has no effect on the Totten trust accounts in either the Dime Savings Bank or the Metropolitan Bank. Title to the funds in said accounts vests in the named beneficiaries pursuant to EPTL 7-5.2 (4).
It is apparent that there exists insufficient funds in account at the Dime Savings Bank to satisfy the bequests in article fourth and there are no accounts in the Metropolitan Savings Bank from which to satisfy the bequests in article fifth. It is also evident that all of the bequests set forth in the respective articles are demonstrative bequests. EPTL 1-2.3 defines a demonstrative bequest as "a testamentary disposition of property to be taken out of specified or identified property.” In Matter of Rosenthal (64 Misc 2d 772 [Sur Ct, Erie County 1970]), the testatrix bequeathed the sum of $500 to various organizations to be paid out of deposits in certain bank accounts. In the same paragraph, the testatrix bequeathed the remainder of the deposits in said bank accounts to another organization. The court held that all of the above dispositions were demonstrative bequests.
Similarly, in the instant case article fourth provides a bequest of $1,500 to two organizations and an individual, to be paid out of the decedent’s moneys on deposit in a certain bank. In the same article, the decedent bequeathed the balance of her moneys on deposit in said bank to other individu *749 ais. In article fifth, the decedent bequeathed all of her moneys on deposit in a certain bank to several individuals. In view of the above-cited authorities, these bequests are all demonstrative bequests.
Defining a bequest as demonstrative rather than specific or general has particular significance in the instant case. As stated by the Court of Appeals in Crawford v McCarthy (159 NY 514, 519 [1899]): "A demonstrative legacy is a bequest of a certain sum of money, stock or the like, payable out of a particular fund or security * * * A demonstrative legacy partakes of the nature of a general legacy by bequeathing a specified amount and also of the nature of a specific legacy by pointing out the fund from which the payment is to be made; but differs from a specific legacy in the particular, that if the fund pointed out for the payment of the legacy fails, resort may be had to the general assets of the estate.” There are insufficient funds on deposit in either the Dime or Metropolitan Bank accounts to satisfy the demonstrative bequests, and consequently all of the assets not particularly disposed of by will, namely, the residuary legacy, must "abate completely” to satisfy these bequests. (Matter of Barnett, 95 Misc 2d 675 [Sur Ct, Nassau County 1978]; Matter of Peters, 32 Misc 2d 1004 [Sur Ct, NY County 1962].) The court realizes that under the facts of this case, the effect of these decisions is to deplete the entire residuary estate. Notably, the named demonstrative legatees in article fifth are also the residuary legatees named in article sixth and therefore do not lose the entire residuary estate. Conversely, were the demonstrative legatees and the residuary legatees not the same individuals and the amount of the residuary estate far in excess of the amounts ever on deposit at the banks, so as to result in a gross injustice and indifference to the language of the will and the testator’s intent, a different construction of article fourth (d) and article fifth may have been warranted. This construction is therefore limited to the facts presented.
The court has been advised that there are assets in the residuary to satisfy the demonstrative legacies. Accordingly, whatever property falls under the residuary clause, article sixth of the decedent’s will, is first to be distributed to the three legatees named in article fourth (a), (b) and (c), in the amount of $500 each. The balance of the residuary is to be distributed equally amongst the legatees in article fourth (d) and article fifth as follows: One half of the balance of the residuary is to be distributed to the article fourth (d) lega *750 tees, of which the five individuals would each receive one fifth of the one half. The other one half of the balance of the residuary is to be distributed to the article fifth legatees, of which the three named individuals would each receive one third of the one half.